### LEVY v. ROPER et al.   (No. 6534.)

(Court of Civil Appeals of Texas. San Antonio. March 30, 1921. Rehearing Denied April 30, 1921.)

**1. Principal and agent ⬤⟳177(2)—Purchaser at sale under foreclosure of lien not innocent purchaser, his agent knowing of fraud.**

Purchaser at sale under judgment foreclosing a vendor's lien is not an innocent purchaser, he having acted wholly through an agent, and so been charged with his knowledge that the owners of the land had not been cited nor represented in the action by an attorney having authority to do so.

**2. Vendor and purchaser ⬤⟳287—Sale without notice under foreclosure of lien void.**

Failure to give notice to owners of land, as required by Rev. St. art. 3757, of sale under judgment foreclosing vendor's lien, renders the sale voidable.

**3. Judgment ⬤⟳352—Vacated on direct proceeding where defendants were not cited, though unauthorized attorney appeared.**

Judgment rendered against defendants not served with process, though an attorney without authority appeared for them, can be vacated by direct proceeding.

**4. Judgment ⬤⟳392—Recital of service and appearance only presumptive of regularity on direct attack.**

Recital in judgment against defendants of service on and appearance by them raises only a presumption of regularity, which can be removed in direct proceeding to set aside the judgment.

**5. Limitation of actions ⬤⟳100(4)—Till fraud in procuring judgment is discovered, statute does not run against action to avoid.**

Fraud in procuring judgment against defendants who were not served and did not appear, notwithstanding recital in the judgment of service and appearance, and though an attorney unauthorized to do so appeared for them, prevents the statute running before discovery of the fraud, even against adult defendants, as regards time for bringing action to set aside the judgment and sale under it.

**6. Infants ⬤⟳78(1), 89—Judgment against without citation or guardian ad litem void.**

Judgment against infant defendants, who were not served, and for whom no guardians ad litem were appointed, is void, or at least voidable.

**7. Vendor and purchaser ⬤⟳287—Where purchaser under foreclosure of lien had notice of fraud, owners to avoid sale need not offer to repay him.**

Where judgment purporting to foreclose vendor's lien was rendered on a note barred by limitations, and without any citation to or appearance by the landowners, and sale thereunder was without notice to them, they seeking to avoid the judgment, sale need not offer to repay what was paid by the purchaser, who bought through an agent knowing of the fraud.

**8. Appeal and error ⬤⟳173(4)—Objection must be made below to any failure to offer to do equity.**

Objection that persons whose land was sold under judgment purporting to foreclose a vendor's lien did not, in suit to avoid the judgment and sale, offer to repay what the purchaser paid for the land, may not be raised for the first time on appeal.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by Mrs. Ward Roper and others against Sam Levy and others. From an adverse judgment, the named defendant appeals. Affirmed.

J. C. Terrell, of Fort Worth, and Vaughan & Abney, of Hillsboro, for appellant.

F. E. Johnson, of Cleburne, S. C. Padelford, of Fort Worth, and J. I. Kilpatrick, Jr., and Walker & Baker, all of Cleburne, for appellees.

FLY, C. J. Mrs. Ward Roper, a widow, joined with her children, William L. Roper, R. B. Roper, Ward Roper and wife, Sidney N. Roper, and Lillie Ward Roper, the last two, minors, suing through their mother as next friend, brought this action against B. C. Walden, Sam Levy, J. H. Roper, and R. L. Hedrick, to restrain appellant Sam Levy from trying and prosecuting to judgment a certain case pending in the district court of Hill county wherein the said Levy is plaintiff and appellees are defendants, and that a certain judgment in a case numbered 6853 on the docket of Johnson county be declared null and void, and be set aside. Hedrick, in a cross-bill, joined in the prayer of the plaintiffs. The cause was submitted to a jury on certain special issues, and upon the responses thereto judgment was rendered against Sam Levy, D. C. Walden, and J. H. Roper, as prayed for in the petition and the cross-bill of R. L. Hedrick.

It is alleged in the first amended petition, on which the suit was tried, that the plaintiffs reside in Johnson county, and resided there on September 1, 1912, and that J. H. Roper and R. L. Hedrick have resided in Hill county before 1912 and down to the present time; that Ward Roper was the husband of the widow and the father of the children, plaintiffs, and died intestate on September 16, 1911, and at the time of his death, and long prior thereto, was a resident citizen of Johnson county; that three of the children, Ward Roper, Sidney W. Roper, and Lillie Ward Roper, were minors in September and October 1912, and had no legally appointed guardians of their persons or property. At the time of the father and husband's death, it was alleged, his estate was largely indebted, and no administration was taken out on his estate until the surviving wife was appointed community administrator; that he owned at his death 320 acres of land in Hill county, known as the William Kensey lower tract; that the purchase money had been fully paid, but that defendant D. C. Walden claimed to have obtained possession of a certain note for $500 given as part purchase money on the land, as collateral security for money borrowed by Ward Roper, deceased; that on September 7, 1912, Walden filed suit in the district court of Johnson county against all the plaintiffs and J. H. Roper and R. L. Hedrick on the $500 note, asking for a judgment thereon, and for foreclosure of a vendor's lien on the land in Hill county. In that suit it was alleged that the vendors of the land to Ward Roper had assigned the note to Walden, and that it was also signed by J. H. Roper; that the note had been extended until November 11, 1910. Walden also alleged that 172 acres of the land had been conveyed by Ward Roper to R. L. Hedrick, and Walden prayed for judgment for his debt, interest, and costs against J. H. Roper, and for judgment fixing amount due as against all the other defendants in that suit and foreclosure of lien.

It was further alleged in the petition herein that no citations were ever issued in the Walden suit as against Mrs. Ward Roper and her children, three of whom were minors, and no citation was as a matter of course ever served on either of them, and that they nor either of them ever authorized any one to appear for them in the Walden suit, or ever signed any waiver of process, and that they, nor either of them, had any knowledge or notice of said suit, actual or otherwise. It was alleged that the judgment was procured fraudulently, and that the $500 note had never been extended, but was barred by limitation when the judgment was obtained by Walden. It was alleged that on October 9, 1912, entry was made on the docket of the district court as follows:

"Judgment by default for amount sued for against J. H. Roper and amount charged $500, 10 per cent. interest from November 11, 1910, and 10 per cent. attorneys' fees and foreclosure of lien as to all parties."

And with that entry as a basis judgment was rendered in which it was recited that Mrs. Roper and her children appeared by their attorney, and that J. H. Roper and R. L. Hedrick made default, and that Walden recover the amount of the note of J. H. Roper, and lien be foreclosed as to the other defendants. It was alleged that a sale of the land took place, and that it was purchased by J. H. Roper for appellant.

The facts sustain the material allegations of the petition. The evidence shows that on October 9, 1912, in suit No. 6853, of D. C. Walden v. J. H. Roper et al., on the docket of Johnson county, judgment was rendered against J. H. Roper for the sum of $655.15, and a lien foreclosed against 320 acres of land in Hill county belonging to the estate of Ward Roper, deceased. No citation or process was issued to or served on Mrs. Ward Roper, widow of Ward Roper, deceased, or either of his children named herein, and neither of them had any knowledge, actual or constructive, of the pendency of such suit, and no one was authorized to appear in said suit and answer for them, although it is recited in the judgment that Mrs. Ward Roper, widow, W. L. Roper, R. B. Roper, Sidney N. Roper, Ward Roper, and Lillie Ward Roper appeared and answered. Three of the parties named were minors at that time, and two of them are still minors. The note for $500 at the time of the judgment was barred by limi-

tation, and there had never been any legal renewal of the note, or extension in connection therewith. The plaintiffs never heard of the suit until 1918. The dockets of the district court of Johnson county indicate that no citation was issued for any one in the Walden case except J. H. Roper and R. L. Hedrick, who lived in Hill county. John H. Roper, a brother of Ward Roper, deceased, conceived the idea of having the property of his brother's widow and children sold, and suggested to appellant that he buy it, and, in fact, acted as the agent of appellant in buying the land at a great sacrifice, $725 being paid for 320 acres of land in Hill county. John H. Roper has been appellant's agent ever since the sale, paying taxes and leasing the land. Appellant claims that he did not even know anything about any lawsuit under whose judgment J. H. Roper bought the land. He seemed to know nothing about the matter, his testimony consisting largely of his conclusions of fact and law. He has never seen the land, but bought the land at the suggestion of John H. Roper for the purpose of making money out of it. John H. Roper maneuvered the whole matter, and bought the land, and has been in possession of it ever since the sale.

[1] The third assignment of error complains of the refusal of the court to instruct a verdict for appellant. Appellant's agent, J. H. Roper, did know that his brother's widow and children had not been cited, knew that no attorney had the authority to represent them, and knew that the recitals in the judgment as to service and appearance were false, and knew that a judgment was entered that was fraudulent. Appellant was charged with the knowledge of his agent who was chosen to obtain a tract of land for a trifle from a widow and children. He is in no position to pose as an innocent purchaser. He testified that he had an honorable attorney to represent him, but the fact remains that the attorney did not act, but John H. Roper acted. The attorney's testimony was not produced, nor its absence accounted for. Appellant, according to his testimony, did not know that Walden had a judgment against any one, for he stated that he had no knowledge of any lawsuit between Walden and J. H. Roper and others, knew nothing about any judgment against Mrs. Roper and children and has never seen the land. J. H. Roper owed him, and he wanted to make money out of the property. J. H. Roper, with full knowledge of all the facts, as agent of appellant, managed the whole affair and concocted and carried through the scheme to defraud the widow and orphans of his deceased brother. J. H. Roper has had absolute control of the property since it was sold by the sheriff. There is nothing in the testimony that tends to show that J. H. Roper had any interests adverse to appellant. They worked together in perfect harmony, and are stilling so working, although J. H. Roper was not called by appellant to testify. None of the eight propositions under the assignment can be sustained.

[2] The first issue was as to notice to the widow and children of the time and place of the sale of the land, and this is claimed, through the fifth assignment of error, to be wholly immaterial and irrelevant. The assignment is overruled. The statute requires the officer making a levy on land under execution, order of sale, or venditioni exponas to give the defendant or his attorney written notice of such sale, either in person or by mail. Article 3757, Rev. Stats. In this case no notices were received by Mrs. Ward Roper or her children, and the testimony as to notices being mailed was so unsatisfactory that a jury could well find that they were not mailed. The failure to give personal notice rendered the sale voidable, and it was a material issue. Bean v. Brownwood, 91 Tex. 648, 45 S. W. 897.

The evidence showed beyond doubt that the judgment was rendered in the Walden Case without notice of any kind to Mrs. Ward Roper and her children that any such suit was instituted, or judgment rendered in the same. The recitals in the judgment as to service were shown to be utterly false and fraudulent, and that the existence of the judgment and a sale of the land was not known to appellees, Ropers, for five years after the judgment was rendered.

[3] When a judgment has been rendered against a party, without serving him with process, and the facts show that an attorney appeared for him without being authorized so to do, a judgment rendered in the case can be vacated by a direct proceeding, as in this case. Parker v. Spencer, 61 Tex. 155; Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808. In both of those cases process had not been served, but there was a recital that an attorney had appeared for the defendant, but without authority, as in this case. In the case of Roller v. Ried, 87 Tex. 69, 26 S. W. 1060, the Supreme Court held:

"A judgment entered against a party without service of process, as required by law, is void."

[4, 5] It is true that the recital of service and appearance in the judgment would raise a presumption of regularity, but that presumption can be removed in a direct proceeding to set aside the judgment. Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325. It was removed in this case by all of the evidence on the subject, and in removing it fraud was established beyond a reasonable doubt. If the parties defendant were not cited, J. H. Roper knew it, and through him, appellant, who was acting with him, knew it. This fraud prevented the statute of limitations from running against the adults until it

was discovered, and it could not run against the minors. The suit was brought within a reasonable time from the discovery of the fraud.

Appellant reposed his confidence in J. H. Roper and made him his agent to buy the land. The agent had told the appellant that the land would be procured cheap, and the agent was authorized to purchase it. Appellant did not disclose the time when J. H. Roper spoke to him about the purchase of the land. It may have been before the suit was instituted in September 1912, at the time the judgment was rendered on October 9, 1912, or afterwards. We know it was before the land was sold in December. The reasonable conclusion to draw from the facts is that appellant knew all about the fraudulent judgment, and was a party to it, or it was a feigned sale to him in the interest of J. H. Roper. When the sale was made, J. H. Roper's knowledge of the fraud was the knowledge of the appellant. Meuley v. Ziegler, 23 Tex. 88; Crews v. Taylor, 56 Tex. 461; Dodge v. Litter, 73 Tex. 319, 11 S. W. 331.

Appellant knew nothing, according to his testimony, about any lawsuit or judgment under which he bought the land, although the sheriff's deed recited these facts and gave the names of all the defendants. He turned the whole matter over to J. H. Roper, not even taking the trouble to read his deed, to see the land, or make any inquiries about it, or about the title.

At the time the suit was brought Walden was charged with notice that Ward Roper was dead, and that no administration had been opened up on his estate, and yet he sued the widow and orphans, three of whom were minors, making J. H. Roper, their uncle, a party also. The latter did not answer, although duly cited, and made no effort to protect the interest of his brother's widow and children, but on the other hand had informed appellant that the land could be bought cheap, and actually represented him at the sale in getting 320 acres of land in the great agricultural county of Hill for little more than $2 an acre.

[6] Three of the defendants in the Walden suit were minors, and no guardian ad litem was appointed for them, as required by law, nor was there any personal service on them, and while it is the settled doctrine in Texas that when a guardian ad litem is appointed by the court to represent a minor who has not been served with process, the judgment against such minor will be voidable only, and not void, we have seen no decision in which a judgment is held not to be void when there is neither personal service nor a guardian ad litem appointed. It has also been held that when a minor has been duly cited and no guardian ad litem appointed to represent him, the judgment against him will only be

voidable, and can only be set aside in a proceeding directly instituted for that purpose. Wallis v. Stuart, 92 Tex. 568, 50 S. W. 567. At the time the judgment was rendered against the minors, one was 17 years of age, another, 7 years of age, and another, 3 years of age, and yet no pretense was made to serve them, or to have a guardian ad litem appointed. If anything would render a judgment void, it would seem that these facts ought to render this judgment void, but even if voidable only, a direct proceeding had been prosecuted to set the judgment aside, and properly met with success in the trial court.

It is true that these children of tender age were sued as adults, but it was done by a man who lived in the county with them, and must have known they were minors, and that an uncle representing appellant, and, keen for him to buy the land at a sacrifice, was a party to the suit and served with a copy of the petition, yet made no effort to protect the infant orphans of his dead brother. Fraud is written all over the transaction, and appellant is charged with knowledge of it through his trusted agent, John H. Roper. Appellant never saw the judgment, did not know that he derived his title through an execution sale, but trusted everything to his agent, who was thoroughly acquainted with all the facts. The agent's knowledge was appellant's knowledge, and the agent's acts, appellant's acts. As the principal is held liable for the negligence of his agent, so with equal reason and propriety he is liable for the fraudulent acts of the agent done in the course of the agency and by virtue of the authority as agent. Courts have gone further and held that even where the fraudulent act could not be considered within the scope of the employment, and the principal voluntarily, and with knowledge, seeks to enforce, or base a defense upon, or to claim benefits under, a contract, or other similar act, actually induced by the fraud of his agent, he will be held liable for the fraud. Mechem on Agency, §§ 1984–1986, and authorities cited in footnotes; Wintz v. Morrison, 17 Tex. 372, 67 Am. Dec. 658; Henderson v. Railroad Co., 17 Tex. 560, 67 Am. Dec. 675; Wright v. Calhoun, 19 Tex. 412.

As said in the last case cited:

"The bona fide purchaser is protected because he was a stranger to the fraudulent transaction. But he who employs the instrumentality of another to make a contract for him is himself a party to the contract, and is as much bound by the acts of his agent in making that contract as if he had himself personally done them; and that is this case. Calhoun employed the instrumentality of Rogers, who acted fraudulently in effecting the purchase; and the maxim applies in full force, 'Qui facit per alium, facit per se.' If he would adopt the acts of his agent, he must take them altogether; as well those which defeat as those which confer a benefit. If he would take the

benefit of a contract, he must take it as a whole, with all its attendant circumstances. He cannot adopt just so much as confers an advantage, and reject the rest. The whole must be taken together as one and the same transaction. It is good as a whole, or not good at all. It cannot be adopted in part or rejected in part. If the whole cannot be supported, no part of it can be, but it must be rejected altogether."

See, also, Insurance Co. v. Willis, 70 Tex. 12, 6 S. W. 825, 8 Am. St. Rep. 566. J. H. Roper had told appellant about the land, and he was given authority to buy the land, with no admonition except to buy cheap. His power otherwise was plenary. John Roper bought cheap, very cheap, even at the expense of the widow and orphans, and was placed in possession of it by his principal, and his acts have never been repudiated, but he is still the trusted agent of appellant, with full control over the land in controversy.

[7, 8] There is no merit in the contention that appellees did not offer to repay the money paid out by appellant for the land. He is not in a position to ask for return of the money, and, if he were, he is in no position to raise the question in this court, because he failed to raise it by exception or otherwise in the lower court. Black, Rescission and Cancellation, § 672, pp. 1525, 1526; Williams v. Wright, 20 Tex. 500; Davis v. Burkholder, 218 S. W. 1101.

The judgment is affirmed.